**E-FILED**
Thursday, 20 August, 2009  11:11:13 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JIMMY E. SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-3150 |
| | ) | |
| SANGAMON COUNTY SHERIFF'S | ) | |
| DEPARTMENT, NEIL | ) | |
| WILLIAMSON, TERRY DURR, | ) | |
| WILLIAM STRAYER, LT. ENOS | ) | |
| BRENTS, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (d/e 36).  Plaintiff Jimmy E. Smith filed a Memorandum in Response to Defendants' Motion to Dismiss (d/e 39).  For the reasons stated below, the Motion is allowed in part and denied in part.

### FACTS

In this 42 U.S.C. § 1983 action, Smith brings claims against the Sangamon County Sheriff's Department; the Sheriff of Sangamon County,

Neil Williamson; the Superintendent of the Sangamon County Detention Facility (the Detention Facility), Terry Durr; the Assistant Superintendent of the Detention Facility, William Strayer; and Lieutenant Brents, an officer with the Sanagamon County Sheriff's Department.  He alleges that these Defendants violated his Eighth and Fourteenth Amendment rights to be free of cruel and unusual punishment and to be afforded the privileges and immunities of citizens of the United States.

For purposes of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in a complaint and draw all inferences in favor of the non-moving party.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  Here, for the purpose of ruling on the pending Motion, the Court accepts as true the allegations in Smith's Third Amended Complaint (d/e 35).

According to the Third Amended Complaint, Smith suffered a severe beating from a fellow inmate on June 8, 2005.  Smith was incarcerated at the Detention Facility for a nonviolent crime and had no known history of violence.  He was housed in a cellblock with Jason Newell, an inmate whom Defendants knew to be violent.  On June 8, 2005, without provocation,

Newell attacked Smith.  He threw Smith on his head, stomped on his back, and knocked him unconscious.  Smith suffered multiple fractures, herniated discs, nerve damage, post traumatic stress disorder, and brain swelling and bleeding.

After the attack, at least two correctional officers found Smith unconscious on the floor.  Despite Smith's obvious head, neck, and back injuries, the two officers tried to make him walk; when they were unsuccessful, they dragged him to a wheelchair and placed him upright on the seat.  They then wheeled him to a police car and drove him to the hospital.  When Smith returned from the hospital, Detention Facility nursing staff denied him adequate pain medication and bedding.

According to Smith, the Sangamon County Sheriff's Department failed to adequately train its correctional officers and nursing staff.  Because the correctional officers and nursing staff lacked proper training, they failed to administer proper medical treatment immediately following the altercation and on Smith's return from the hospital.

Additionally, Smith alleges that the Sangamon County Sheriff's Department's practices and policies harmed him in this instance.  He claims that the Sangamon County Sheriff's Department, per policy and custom,

approves, facilitates, and condones its employees' turning a blind eye toward the conduct that caused his suffering. He also claims that the Sangamon County Sheriff's Department maintains a well-settled practice of denying inmates items vital to their physical health, including medication and proper bedding. As examples, Smith alleges that in 2003, inmate Larry A. Hudson died in the Detention Facility because the Sangamon County Sheriff's Department failed to administer proper medication to treat his diabetes. Additionally, Smith alleges that at some other time, inmate Daniel Imlay was denied a blanket for more than 24 hours, and he resorted to sleeping inside his mattress to stay warm.

Following the attack and his return from the hospital, Smith attempted to contact his attorney, and he filed grievances with the Detention Facility. He alleges that in return, all of the Defendants retaliated against him. Specifically, he alleges that unnamed correctional officers and jail employees verbally and physically harassed him, confiscated his personal property, and denied him pain medication. He claims that Defendants Williamson, Durr, Strayer, and Brents refused to provide information regarding his attack. Further, he alleges that his return to housing in cellblocks with other known violent persons constituted

retaliation.  According to Smith, this retaliation occurred per Sangamon County Sheriff's Department policy and custom.

On June 8, 2007, Smith filed this action.  His Third Amended Complaint raises five claims.  In Count I, Smith alleges that the Sangamon County Sheriff's Department failed to protect him from attack.  In Count II, he claims that the Sangamon County Sheriff's Department demonstrated deliberate indifference to his health, safety, and constitutional rights in its handling of him immediately following the attack and when he returned from the hospital.  In Count III, Smith alleges that the Sangamon County Sheriff's Department failed to train its correctional officers and nursing staff in recognizing medical need and thereby demonstrated deliberate indifference to his health and safety.  In Count IV, Smith claims that all of the Defendants approved of, facilitated, condoned, and turned a blind eye toward the conduct that harmed him, and thus they acted with reckless disregard for his rights.  In Count V, Smith brings a retaliation claim against all of the Defendants.

<u>ANALYSIS</u>

Defendants argue that the Court should dismiss all of Smith's claims under Rule 12(b)(6).  This rule provides that dismissal is proper where a

complaint fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When a complaint's allegations do not "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" the Court must dismiss.  EEOC v. Concentra Health Svs., Inc., 496 F.3d 773, 777 (7th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Indeed, the Supreme Court has held that Bell Atlantic "retired the Conley no-set-of-facts test" that prohibited dismissal unless the complaint established that the plaintiff could prove no set of facts entitling him to relief.  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1944 (2009).[1]  Now, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. at 1949 (internal quotation marks omitted).  According to the Seventh Circuit, a claim that is plausible on its face provides the defendant fair notice of what the claim is and the grounds upon which it rests.  Moore v. FBI, 283 Fed.Appx. 397, 399 (7th Cir. 2008).

Defendants have raised numerous arguments in support of their Motion.  They assert that a statute of limitations bars all of Smith's claims

---

[1] Smith insists that the Bell Atlantic standard applies only in antitrust cases, but after Iqbal, this argument clearly fails.

against the Sangamon County Sheriff's Department.  On Count I, they also argue that Smith did not adequately allege incarceration under conditions posing a substantial risk of serious harm and deliberate indifference to that risk and therefore failed to state a claim for failure to protect.  On Count III, they contend that Smith's claim includes no allegations of notice, and therefore he did not state a claim for failure to train.  Defendants also argue that Smith's Counts IV and V claims against Defendants Williamson, Durr, Strayer, and Brents include no allegations of personal involvement.  On Count IV, they assert that Smith failed to plead supervisory authority, and on Count V, they argue that Defendants Williamson, Durr, Strayer, and Brents are entitled to qualified immunity.  As set forth below, the Court rejects Defendants' arguments except for a portion of their contention that Count V fails to allege personal involvement by Defendants Williamson, Durr, Strayer, and Brents.

I.    <u>STATUTE OF LIMITATIONS</u>

Defendants contend that a statute of limitations bars all of Smith's claims against the Sangamon County Sheriff's Department, but their argument relies on a mistaken assumption.  Smith does not know the identity of the correctional officers and nurses who treated him after his

attack and return from the hospital, and the Court previously dismissed Smith's placeholder claims against these "fictitious parties" because he failed to identify the individuals before his statute of limitations ran out.  <u>See Opinion (d/e 20) issued June 18, 2008</u>, at 12.  Because evidence of these officers' and nurses' conduct is necessary to establish his claims against the Sangamon County Sheriff's Department, they argue that the statute of limitations also bars these claims.  Their position assumes that where a statue of limitations bars a claim, it also prevents a plaintiff from establishing that claim's underlying facts in support of a non-barred claim. That is not the case.

Municipal liability in a § 1983 case must be premised on an underlying constitutional violation by an individual, but that individual need not be a party to the action.  <u>See</u> <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1519-20 (7th Cir. 1990) (holding that a claim against a municipality could proceed even after dismissal of the companion claim against the individual actor responsible for the underlying constitutional violation). Defendants cite two cases concluding that a plaintiff can prove municipal liability only by establishing the liability of the individual actors.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (holding that where a

jury found the individual actor not liable, the municipalities also could not be held liable); <u>Tesch v. County of Green Lake</u>, 157 F.3d 465, 477 (7th Cir. 1998) ("A failure to train theory or a failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim."). Yet, in both of these cases, the individual actors actually were parties when the cases reached summary judgment or trial. The plaintiffs then failed to offer sufficient evidence to establish the individuals' liability, and the courts held that consequently the plaintiffs also could not prove municipal liability. These two cases present situations fundamentally different from the one at bar. The affirmative defense that bars Smith from holding the unidentified correctional officers and nurses liable does not prevent him from establishing that they committed a constitutional violation.

Defendants have identified one case in which a district court concluded that because a statute of limitations barred claims against the individual actors in a § 1983 action, the plaintiff could not prove municipal liability. See <u>Wince v. Sheahan</u>, 2003 WL 21799932, at *6 (N.D. Ill. July 25, 2003). This case lacks any analysis of the distinction between the requirements for proving liability and the requirements for establishing an

underlying violation.  It states only that the statute of limitations would bar
any claims against unnamed individuals, and "accordingly," the municipal
liability claims must be dismissed.  Id.  Wince is not persuasive.  Moreover,
at least one other district court has held that a plaintiff may prove municipal
liability even where a statute of limitations bars individual claims.  See, e.g.,
Coronna v. County of Suffolk, 2008 WL 2371421, at *8 (E.D.N.Y. June 9,
2008) (holding that while a plaintiff must prove an underlying
constitutional violation by an individual to succeed on a municipal liability
claim, the fact that a statute of limitations has run on a claim against the
individual does not mean that the plaintiff cannot recover against the
municipality).  The statute of limitations' bar on Smith's claims against the
unnamed correctional officers and nurses does not require dismissal of his
timely filed claims against the Sangamon County Sheriff's Department.

II.    FAILURE TO PROTECT

Next, Defendants argue that Smith has not adequately pled a claim for
failure to protect in Count I, but this argument is unpersuasive.  In this
Count, Smith alleges that the Sangamon County Sheriff's Department failed
to protect him from attack. To state a claim for failure to protect, a plaintiff
must allege that he was incarcerated under conditions posing a substantial

risk of serious harm and that the defendant acted with deliberate indifference to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994). Moreover, to survive a motion to dismiss, a plaintiff must include in his complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal,129 S. Ct. at 1949.  Beyond the conclusory allegations that the Sangamon County Sheriff's Department incarcerated him under conditions posing a substantial risk of serious harm and acted with deliberate indifference to that risk, in Count I Smith alleges that he was incarcerated with a known violent inmate.

In the Seventh Circuit, "it is possible to state a claim on the basis of a guard's knowledge that a particular inmate poses a heightened risk of assault to the plaintiff."  Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005) (internal quotation marks omitted).  By alleging that the Sangamon County Sheriff's Department knowingly housed him with a violent inmate, Smith has alleged enough to survive a motion to dismiss.  Even under Bell Atlantic and Iqbal, Smith has given the Sangamon County Sheriff's Department "fair notice of the nature of the claim . . . [and] grounds on which the claim rests."  Bell Atlantic, 550 U.S. at 556 n.3 (internal quotation marks omitted).

III.    FAILURE TO TRAIN

Defendants also argue that the Court should dismiss Count III, which alleges that the Sangamon County Sheriff's Department failed to train its correctional officers and nursing staff in recognizing medical need and thereby demonstrated deliberate indifference to Smith's health and safety. According to Defendants, Smith's Count III failure to train claim is deficient because it fails to allege that the Sangamon County Sheriff's Department had notice that a failure to train would result in constitutional deprivations. This argument also fails.

In City of Canton, Ohio v. Harris, the Supreme Court held that a municipality's failure to train its employees adequately can form the basis for § 1983 liability if the failure rises to the level of policy or custom. City of Canton, Ohio, 489 U.S. 378, 388-89 (1989).   To allege an unconstitutional municipal policy or custom, a plaintiff must reference: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." Chortek v. City of Milwaukee, 356 F.3d 740, 748 (7th Cir. 2004).

12

Count III fails to reference any express policy or allege that a person with final policymaking authority caused Smith's injuries. Only the second category might apply here.

A failure to train can constitute a permanent well-settled custom if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio, 489 U.S. at 390. The Seventh Circuit has applied this standard to conclude that a municipality evinces a deliberate indifference to the rights of its citizens where it fails to train its employees "with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." Robles v. City of Fort Wayne, 113 F.3d 732, 735 (7th Cir. 1997) (internal quotation marks omitted). Additionally, a municipality that fails to provide further training "after learning of a pattern of constitutional violations" is deliberately indifferent. Id. A plaintiff states a claim for failure to train by alleging that a municipality failed to train its employees "in the face of actual or constructive notice that such a failure is likely to result in constitutional

deprivations." Id. (internal quotation marks omitted).

Defendants argue that Count III does not allege actual or constructive notice.  Yet, Smith alleges that Sangamon County Sheriff's Department officials repeatedly denied inmates proper medical care and bedding.  He alleges that among other incidents, the death of an inmate suffering from diabetes and seizures and an inmate's resort to sleeping inside his mattress for lack of a blanket should have prompted the Sangamon County Sheriff's Department to provide its employees better training.  These allegations suffice to state a claim for failure to train in Count III.

IV.   PERSONAL INVOLVEMENT

Defendants next argue that the Court should dismiss the claims in Counts IV and V against the individual Defendants.  In Count IV, Smith claims that all of the Defendants acted with reckless disregard for his rights by approving, facilitating, condoning, and turning a blind eye to the conduct that harmed him.  In Count V, Smith alleges that all of the Defendants retaliated against him for complaining about his treatment and attempting to contact his attorney.  Defendants argue that Smith failed to allege personal involvement on the part of the individual Defendants in these claims.  In part, they are correct.

Individual liability under § 1983, no matter what the constitutional theory, must be based on personal responsibility. Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir. 1984). "An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986) (emphasis in original) (internal quotation marks omitted). Defendants Williamson, Durr, Strayer, and Brents may be individually liable if they: (1) participated directly in the alleged constitutional deprivations; (2) acted or failed to act with reckless disregard of Smith's constitutional rights; or (3) directed the conduct that allegedly violated Smith's constitutional rights or knew of it and consented to it. Id. at 274; Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

In Count IV, Smith alleges no direct participation in the alleged constitutional deprivations, but he does allege that in reckless disregard of his rights, Defendants Williamson, Durr, Strayer, and Brents failed to investigate the incidents properly when he requested investigation, failed to provide him with information in response to his requests, failed to notify his family members of his injuries, and failed to discipline the correctional officers and nurses involved. According to Smith, their failures

demonstrated knowledge of and consent to the alleged constitutional deprivations.  The Court previously dismissed a prior version of this Count for failure to allege personal involvement on behalf of the individual Defendants, but in its current form, Count IV alleges that Smith repeatedly asked Defendants Williamson, Durr, Strayer, and Brents "to investigate the incidents," and they failed to do so.  Third Amended Complaint, Count IV, ¶ 3.  Smith's allegation that he repeatedly asked these four Defendants to investigate the incidents related to his attack suffices to allege personal involvement.

Yet, neither this aspect of Count IV nor any other, suffices to allege a claim for a violation of Smith's Eighth or Fourteenth Amendment rights. The harm Smith allegedly suffered occurred at the time of his attack and immediately thereafter.  If Defendants failed to investigate Smith's complaints, provide him with information in response to his requests, notify his family members of his injuries, or discipline the correctional officers and nurses involved, these failures, standing alone, did not violate his Eighth or Fourteenth Amendment rights.  If an urge to retaliate against Smith motivated Defendants in their failure to take these actions, such evidence may support a claim for retaliation in Count V, but they do not suffice to

create an independent claim in Count IV.  Thus, Count IV is dismissed in its entirety.

As noted, however, Count V alleges that Defendants took such actions in retaliation for Smith's complaints about his treatment.  Specifically, Count V alleges:

> 2.   Defendants engaged in a pattern of retaliation against Plaintiff following his filing of grievances and other attempts (while incarcerated) to contact his attorney, Defendant Williamson, and others, seeking resolution and information regarding the tortious acts committed against him by Defendants.
>
> 3.   Such retaliatory acts included (but were not limited to): constant verbal and physical harassment from correctional officers and other jail employees; unwarranted confiscation of personal property by correctional officers and other jail employees; Defendants Williamson, Durr, Strayer, and Brents' refusal to provide information regarding his attack; placing Plaintiff in cellblocks with other known violent persons in the jail (even after his hospitalization following the beating by Newell), pursuant to the jail's policy and custom as alleged above; and denial of necessary pain medication as alleged above.

Third Amended Complaint, Count V, ¶¶ 2-3.  Smith's contention that Defendants Williamson, Durr, Strayer, and Brents refused to provide him information constitutes an allegation of direct participation in retaliatory conduct, but this is the only form of retaliation in which he alleges they

17

directly participated.  Thus, Count V suffices to allege that Defendants Williamson, Durr, Strayer, and Brents personally refused to provide him information, but it does not suffice to allege that they had any personal involvement in verbal and physical harassment, unwarranted confiscation of personal property, his cellblock placement, or denial of necessary pain medication.  To the extent that Count V alleges that Defendants Williamson, Durr, Strayer, and Brents engaged in retaliatory conduct other than refusing to provide Smith information, it is dismissed for failure to allege personal involvement.

V.    QUALIFIED IMMUNITY

Finally, the argument by Defendants Williamson, Durr, Strayer, and Brents that they are entitled to qualified immunity on Count V also fails. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 471-72 (7th Cir. 1997) (internal quotation marks omitted).  As discussed above, the only viable Count V allegation against Defendants Williamson, Durr,

Strayer, and Brents is that they retaliated against Smith for complaining about his treatment by refusing to provide him information regarding the attack.  According to Defendants, no legal authority provides that a post-incident refusal to share information violates clearly established statutory or constitutional rights, and therefore they are entitled to qualified immunity.

Smith argues that whether Defendants Williamson, Durr, Strayer, and Brents are entitled to qualified immunity is a question of fact and thus inappropriate for resolution on a motion to dismiss.  The underlying question of whether Defendants acted in retaliation is a question of fact. See Ustrak v. Fairman, 781 F.2d 573, 578 (7th Cir. 1986).  Yet, on a motion to dismiss, a court accepts a plaintiff's factual allegations as true and assumes that the defendants acted in retaliation.  The court then determines whether a reasonable person would have known that such acts, performed in retaliation, violated clearly established statutory or constitutional rights. Clearly, the question of whether a defendant is entitled to qualified immunity can be decided at the motion to dismiss stage.  See Iqbal, 129 S.Ct. at 1946; Vose v. Kliment, 506 F.3d 565, 566 (7th Cir. 2007).

Neither party has identified any legal authority on the issue of

whether a jail official's refusal to provide an inmate information in retaliation for the filing of grievances violates the inmate's statutory or constitutional rights. Yet, at the time of Smith's grievances, the Seventh Circuit had clearly held that the First Amendment entitles inmates to file grievances, and officers may not retaliate against them for exercising that right. See, e.g., Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000). The issue of qualified immunity here does not depend on whether courts previously had found that withholding information constitutes retaliation. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.") (internal citation omitted). The Seventh Circuit repeatedly has held that jail officials may not retaliate against inmates who file grievances or complaints. Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996). A reasonable person would have known that jail officials cannot take action against an inmate in retaliation for filing complaints, even if that action does not independently violate the inmate's rights. Id. Defendants Williamson, Durr, Strayer, and Brents are not entitled to qualified immunity on Count V.

THEREFORE, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (d/e 36) is ALLOWED in part and DENIED in part. Count IV is dismissed.  Count V's retaliation claims against Defendants Williamson, Durr, Strayer, and Brents based on allegations of verbal and physical harassment, unwarranted confiscation of personal property, cellblock placement, and denial of pain medication are dismissed.  All other aspects of Count V, including the claims against Defendants Williamson, Durr, Strayer, and Brents based on allegations of information withholding, remain.  Counts I, II, and III also remain.

IT IS THEREFORE SO ORDERED.

ENTER:   August 20, 2009

      FOR THE COURT:

                s/  Jeanne E. Scott
              JEANNE E. SCOTT
       UNITED STATES DISTRICT JUDGE