E-FILED
Tuesday, 29 March, 2011 08:23:12 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JIMMY E. SMITH, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07-CV-3150 |
| ) | |
| SANGAMON COUNTY ) | |
| SHERIFF'S DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants' Motion for Summary Judgment (d/e 65) (Motion). Plaintiff Jimmy E. Smith, Jr., was beaten by another inmate while he was incarcerated in the Sangamon County, Illinois, Jail (Jail). He now asserts one claim, set forth in Count I of the Third Amended Complaint (d/e 35) (Complaint), that the policy of the Defendant Sangamon County Sheriff's Department (Department) violated his constitutional rights and caused the beating. Smith voluntarily dismisses Counts II through V of the Complaint. <u>Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment (d/e 76)</u>, at 1. The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. <u>Consent to Proceed Before a United States</u>

Magistrate Judge, and Order of Reference entered April 26, 2010 (d/e 55). As set forth below, Smith fails to present evidence that the Department violated his rights. The Motion, therefore, is ALLOWED.

STATEMENT OF FACTS

On February 28, 2005, Smith was placed in the custody of the Jail. He was charged with impersonating a police officer. A hold was also placed on him for violating the terms of his parole from an earlier conviction and sentence. At that time, Department Correction Officer James Kirby assessed Smith to determine his housing placement within the Jail. Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (d/e 68) (Defendants' Memorandum), attached Affidavit of John Kirby, ¶¶ 18, 22.

Kirby and Correction Officer Vincent Fox were the two classification officers at the Jail. Kirby followed the Department's classification policies to classify prisoners. Under the policy, a classification officer interviewed each prisoner and reviewed his criminal history. Kirby and Fox considered several factors to determine placement. A point value was assigned each factor in accordance with the policy, with a lower point total indicating a higher security risk. In addition, points could be subtracted from the point total for various factors, such as the commission of infractions within the Jail. Inmates that pose the most serious risks had point totals of zero.

Under the policy, these inmates were placed in either the high-risk unit or segregation. Inmates with point totals from one to eighteen were placed in maximum security cell blocks, and inmates with point totals of twenty or more were placed in medium or minimum security cell blocks. Kirby Affidavit, attached policy at SCSD0010.[1] The factors considered included the age and gender of the inmate, the severity of the current charge, the inmate's criminal history, and the inmate's history as an inmate within the Jail. Depending on all of these factors, inmates charged with violent crimes could be housed with offenders charged with non-violent crimes. Kirby Affidavit, ¶ 8.

In applying the classification policy to Smith, Kirby determined that Smith had a classification score of 8, which placed him in a maximum security cell block within the Jail. Factors that affected Smith's classification were his past problems in the Jail and his parole hold. Kirby Affidavit, ¶¶ 18-21; attached Classification Score Sheet SCSD0035.

On May 13, 2005, Jason Newell was arrested and charged with armed robbery and aggravated battery. Fox classified Newell. Fox determined that Newell had 10 points, placing him in maximum security. The factors that affected Newell's classification were his gang affiliation,

---

[1] The Court references the Bates stamp page number on the sheets attached to the Kirby Affidavit.

the severity of the charges, and his criminal record.  Newell had never been in the Jail before, so he had no institutional record.  <u>Defendants' Memorandum</u>, attached <u>Affidavit of Vincent Fox</u>, ¶¶ 11-14; <u>Kirby Affidavit</u> attached <u>Classification Score Sheet</u> SCSD0063.  Neither Kirby nor Fox was familiar with Newell since he had never been housed at the Jail before.  <u>Kirby Affidavit</u>, ¶ 25; <u>Fox Affidavit</u>, ¶¶ 11, 18-19.

On May 22, 2005, Smith was moved into Cell Block D.  Newell was already housed in that cell block.  Smith was moved because he was charged with fighting.  The report of the fight showed that Smith was punched by another inmate while Smith was sitting reading a Bible because Smith would not move his feet to allow the other inmate to clean the floor.  There was no indication that Smith retaliated.  <u>Kirby Affidavit</u>, attached <u>Citation and Violation Report</u> SCSD0050-SCSD0051.

On June 8, 2005, Newell attacked Smith and severely injured him.  Kirby investigated the attack.  On June 15, 2005, Kirby interviewed Newell and two witnesses, fellow inmate Phillip Fayemi and attorney Lance Jones.  All of the witnesses, including Newell, testified that Newell and Fayemi got into an argument over the remote control to the television in the cell block.  Newell eventually punched Fayemi.  Fayemi and Jones stated that Newell punched Fayemi several times.  During the fight, Smith went to the window to tell the guard.  Newell then attacked Smith.  <u>Kirby Affidavit</u>, attached

Phillip Fayemi Interview Summary SCSD0007; Lance Jones Interview Summary SCSD0008; Jason Newell Interview Summary SCSD0009.

According to Jones, Newell had previously threatened to kill Smith if he "stitched" on Newell.[2] Fayemi stated that Newell had been picking on Smith every day. Fayemi further stated that Smith was known as a "stitch." According to Jones, Newell said to Smith after the attack, "I told you what I was gonna do!" Fayemi Interview Summary; Jones Interview Summary.

## ANALYSIS

Smith claims that the Department's classification policy of placing offenders charged with non-violent crimes in the same cell blocks as offenders charged with violent crimes violated Smith's constitutional rights and resulted in Newell's attack on his person. Smith has presented no evidence that any Department knew that Newell presented a risk of harm to Smith. Smith's claim is based solely on the constitutionality of the Department classification policy that allowed offenders charged with non-violent crimes to be housed with offenders charged with violent crimes. The Department moves for summary judgment.

At summary judgment, the Department must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex

---

[2] Kirby consistently uses the term "stitch" in his interview reports. The term seems to mean the same as snitch.

Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Smith. Any doubt as to the existence of a genuine issue for trial must be resolved against the Department. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Once the Department has met its burden, Smith must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, Smith fails to present evidence to demonstrate that an issue of material fact exists.[3]

It appears that Smith was a pretrial detainee in the Jail at the time of the attack. The constitutional claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. Lewis v. Downey, 581 F.3d 467, 473-74 (7th Cir. 2009). In the context of conditions of confinement, however, the standards for pretrial detainees are essentially the same as the Eighth Amendment standards for convicted prisoners. Grieveson v. Anderson, 538 F.3d 763, 772 (7th Cir. 2008).

---

[3]The Department also raises the statute of limitations as a defense. The District Court already rejected that argument. Opinion entered August 20, 2009 (d/e 40), at 7-10. This Court rejects the argument for the reasons stated in the August 20 Opinion.
    The Department also argues that Smith waived the claim that the Department had an unconstitutional policy. Defendant Sangamon county Sheriff's Department's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, at 4. The Court disagrees. The Complaint alleges that the Department had an unconstitutional policy. Complaint, ¶ 7. The claim was not waived.

Smith, therefore, must present evidence that prison officials acted with deliberate indifference in that they knew of and disregarded known risks to Smith's health and safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In addition, Smith is suing the Department rather than the specific Department employees. The Department is only liable if the Department's employees acted pursuant to an express policy or a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or if the person who committed the constitutional violation had final decision making authority for the Department. Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007). The Department's policy or practice must have been the direct cause or moving force behind the constitutional violation. Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 530 (7th Cir. 2000). In this context, Smith must present evidence that the risk of serious harm was "so patently obvious that the municipality must have been aware of risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct." Id., at 530.

Smith can show that such a policy exists by: (1) showing that the policy itself is unconstitutional; or (2) presenting evidence of a series of bad acts that indicate that the policymakers at the Department were "bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the

misconduct of subordinate officers." Id., at 531 (quoting Jackson v. Marion County, 66 F.3d 151,152 (7th Cir. 1995)).  Smith argues that the Department's classification policy is unconstitutional because the policy places detainees charged with a non-violent offense in the same cell block as prisoners convicted of violent offenses.  Smith cites no authority for the proposition that such a policy is facially unconstitutional.  He does not claim that the policy discriminates against a protected class or interferes with a constitutional right other than the Due Process rights of pretrial detainees.  The interference with Due Process rights depends on the risk of harm presented by the policy.  Thus, to establish an issue of material fact exists, Smith still must present evidence that the policy created a such a patently obvious risk of harm to pretrial detainees that the Department's policymakers must have known of the risks and violated the due process rights of pretrial detainees by effectively sanctioning the violence.  Id., at 530.

     Smith fails to meet his burden.  Smith relies only on his own experience in the maximum security cell blocks at the Jail.  His experience, alone, is insufficient in this case to establish that the policy created a patently obvious risk of harm necessary to impose liability on the Department.  Smith has no evidence about the experience of any other detainee.  He has no expert testimony, historical data, or other evidence

that the classification policy posed a significant risk of harm. See Grieveson v. Anderson, 538 F.3d at 774 (Evidence that the plaintiff was attacked and beaten by other prisoners seven times over a five-month period was not enough to establish municipal liability). Smith, thus, has not presented sufficient evidence to show that an issue of material fact exists regarding whether the policy so patently and obviously presented risks to inmates that the Department's policymakers must have known of the risks and effectively sanctioned the violence.

In the alternative, Smith argues that Kirby was deliberately indifferent to the risk of harm to Smith and improperly placed Smith in the maximum security cell blocks in the Jail. Kirby is not the defendant; the Department is. If Kirby violated the classification policy, then he would have acted in contravention to the policy. Kirby's failure to follow the policy would not be a basis for the Department's liability. The Department is entitled to summary judgment on Count I.

WHEREFORE, Defendants' Motion for Summary Judgment (d/e 65) (Motion) is ALLOWED. The Claims in Counts II through V of the Third Amended Complaint are voluntarily dismissed with prejudice. Defendants Neil Williamson, Terry Durr, William Strayer, and Enos Brents are dismissed as parties to this action. Summary Judgment is entered in favor of Defendant Sangamon County Sheriff's Department and against Plaintiff

Jimmy E. Smith, Jr. on all remaining claims.  All pending motions are denied as moot.  THIS CASE IS CLOSED.

ENTER:   March 28, 2011

                      *s/ Byron G. Cudmore*
                      BYRON G. CUDMORE
            UNITED STATES MAGISTRATE JUDGE